**Randy M. POPE, Plaintiff–Appellant,**

v.

**MAN–DATA, INC., dba Pacific Coast Credit # 1, Defendant–Appellee.**

**No. 98–36192.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 2000.

Filed April 18, 2000.

Robert S. Sola, Michael C. Baxter, Law Offices of Baxter & McLaughlin, Portland, Oregon, for the plaintiff-appellant.

Lisa Lear, Nickolas Dibert, Bullivant Houser Bailey, Portland, Oregon, for the defendant-appellee.

Before: NOONAN, GRABER, and FISHER, Circuit Judges.

NOONAN, Circuit Judge:

Randy M. Pope appeals the judgment of the district court following a second trial in Pope's suit against Man–Data, Inc., d.b.a., Pacific Coast Credit (PCC). Pope sought damages for collection abuses by PCC in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. and the Oregon Unlawful Debt Collection Practices Act (UDCPA), ORS §§ 646.639–646.656 (1999). The result of the second trial was in PCC's favor.

We hold that the failure of the juror in the first trial to acknowledge that she had been previously involved in any significant dispute with a collection agency was not demonstrated to have been dishonest. Nor was bias on the juror's part demonstrated. Absent these demonstrations, a new trial should not have been granted. Accordingly, we vacate the judgment following the second trial and remand for an evidentiary hearing on the issue of juror bias.

## FACTS AND PROCEEDINGS

PCC attempted to collect a debt from Pope of $553.22 for unpaid dental services. As part of its collection efforts, PCC filed a small claims action against Pope, incurring $76.30 in costs. After the small claims action was filed, Pope made a $200.00 payment to PCC. PCC deposited this payment into its client trust account and issued itself a check for $76.30 as reimbursement for the filing fees and service costs in the small claims action. PCC applied the remaining $123.70 to Mr. Pope's account, leaving a balance of $429.52. Pope answered the small claims complaint and demanded a jury trial. On August 21, 1995, PCC's attorney Jeffrey Hasson sent a letter to Pope indicating that Pope still owed PCC $429.52. PCC did not respond to Pope's demand for a jury trial within the statutory period, and the small claims action against Pope was dismissed. Pope alleged that PCC was not entitled to court costs because it was not the prevailing party in the small claims action and that its attempt to collect the $76.30 in costs from Pope violated the FDCPA and the UDCPA.

Pope's suit against PCC was tried to a jury from August 12 to August 15, 1997.

During voir dire, the prospective jurors were asked if they had been involved in any "significant dispute" or "serious contentious dispute" with a collection agency. In providing background information about themselves, they were also asked to describe any litigation in which they had been involved. Juror No. 4 offered no response to the questions concerning any prior "significant" or "serious contentious" disputes she may have had with collection agencies. As to litigation, Juror No. 4 stated only that "we were currently involved in a lawsuit over some property ownership dispute, which was settled out of court."

The jury returned a verdict for Pope, awarding him $5,000 in compensatory damages and $100,000 in punitive damages.

Hassan, a lawyer, had represented PCC during the activities for which it was held liable. Puzzled by the trial's outcome, Hassan obtained a list of the jurors' names and ran a search of the public records through Courtlink for each of the jurors. He found the following:

In 1987 Juror No. 4 and her husband were sued in county court for $95 for a dishonored check. Service was not obtained against Juror No. 4. A default judgment was issued against the juror's husband. The judgment was unsatisfied, and the case closed. The lawyer for the plaintiff was Robert Swider, who defended PCC in the suit bought by Pope.

Again in 1987 Juror No. 4 and her husband were jointly sued in county court by Capital Credit and Collection for $556.21. Default judgment was entered. The wages of the juror's husband were garnished. The plaintiff was represented by Jeffrey Hassan himself.

In 1990 Juror No. 4 and her husband were again sued in county court by Capital Credit and Collection, represented by Hassan. The amount sought was $546.83 for medical services. Default judgment was entered and was satisfied, with interest of $20.36, only on January 8, 1997.

PCC moved for a new trial on the basis of this information. The magistrate judge heard argument but did not conduct an evidentiary hearing. Counsel for Pope noted that Juror No. 4 had expressed reluctance to serve because she was the primary caregiver of her three children. Counsel for PCC argued that she had "essentially told a mistruth when she didn't speak up." In a written opinion, the magistrate judge found it "most unlikely" that Juror No. 4 would "simply forget being named in several collection actions," especially as debt collection efforts would have preceded the filing of the actions; the juror, he ruled, had unquestionably been involved in "litigation." If she had answered truthfully, she would have been challenged for cause. The motion for a new trial was granted.

The jury returned a verdict for PCC on all but one of the other claims; as to it, the jury found that Pope had suffered no damage. Pope's request for statutory damages and attorney fees was denied. Judgment was entered for PCC.

Pope appeals.

## ANALYSIS

■ The Supreme Court has held "that to obtain a new trial in such a situation [as ours], a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). A "mistaken, though honest response to a question," the court added, does not meet this test. *Id.* at 555, 104 S.Ct. 845. PCC characterizes the opinion of the court, incorrectly, as a "plurality opinion." Authored by Justice Rehnquist, it was concurred in as the opinion of the court by seven justices.

PCC did not demonstrate that Juror No. 4 answered dishonestly. PCC made plausible arguments that she had; the magistrate judge offered plausible reasons why she might not have forgotten her brushes with the debt collectors. Plausible argumentation and plausible reasoning do not rise to the level of demonstration. An evidentiary hearing would normally be necessary for demonstration of dishonesty of a juror to be made. Such a hearing was not held.

Under *McDonough,* the trial court did have, as Justice Blackmun's concurrence expressed it, the option "to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred." *McDonough,* 464 U.S. at 556–57, 104 S.Ct. 845 (Blackmun, J., concurring). We have stated categorically: "A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances." *Dyer v. Calderon,* 151 F.3d 970, 974 (9th Cir.1998), *cert. de-*

*nied,* 525 U.S. 1033, 119 S.Ct. 575, 142 L.Ed.2d 479 (1998). No such investigation was undertaken here.

 As neither dishonesty nor bias on the part of Juror No. 4 was demonstrated, it was error to grant the new trial. All of the proceedings in the new trial are without effect. Upon remand, the district court must conduct an evidentiary hearing consistent with *McDonough* and *Dyer.* Under *McDonough,* a new trial is warranted only if the district court finds that the juror's voir dire responses were dishonest, rather than merely mistaken, and that her reasons for making the dishonest response call her impartiality into question. *McDonough,* 464 U.S. at 556, 104 S.Ct. 845. Absent such a finding, the first verdict must be reinstated.

Pope also contends on appeal that the district court erred when it determined in the second trial that PCC's attempt to collect the costs of filing a small claims action against Pope was not improper. Although we need not reach this issue, it may arise on remand if the district court determines after a hearing that Juror No. 4 actually harbored bias. Therefore, we address it now in the interest of judicial economy. We agree with Pope's argument.

 Pope made a $200 payment to PCC. PCC reimbursed itself for the small claims filing fee out of Pope's $200 payment. It did not credit the full $200 to Pope's debt of $553.22. Instead, it credited only $123.70 that remained after it had deducted $76.30 in small claims costs. The resulting balance was $429.52. This was not a matter of an internal allocation of funds within PCC, PCC increased Pope's account by the amount of the small claims costs and then attempted to collect this greater amount.

PCC contends on appeal that under Oregon law it was entitled to collect court costs from Pope. However, ORS section 46.485 provides that "the prevailing party shall be entitled to a judgment for the small claims filing fees and service expenses paid by the party and the prevailing party fee provided for in ORS 20.190." PCC was not the prevailing party in the small claims action and therefore was not entitled to costs.

The trial court on remand should award an attorneys' fee based on counsel's work in the original proceeding, on appeal, and on remand. *c.f. Dias v. Bank of Hawaii,* 732 F.2d 1401, 1403 (1984). Accordingly, the judgment for PCC is REVERSED. The case is REMANDED so that an evidentiary hearing can be held.